IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger

Civil Action No. 09-cv-02680-MSK-CBS

JOELLE RIDDLE;
CAROL BLATNICK;
WAYNE BUCK;
MANDY MIKULENCAK,
KATHLEEN CURRY,
RICHARD MURDIE,
LINDA REES, and
GARY HAUSLER

        Plaintiffs,

v.

LINDA DALEY, in her official capacity as La Plata County Clerk and Recorder; and
BERNIE BUESCHER, in his official capacity as Secretary of State of the State of Colorado,

        Defendants.

_____

**OPINION AND ORDER GRANTING
JUDGMENT TO DEFENDANTS ON THE MERITS**
_____

    **THIS MATTER** comes before the Court pursuant to the Plaintiffs' Motion for Summary

Judgment[1] **(# 31)**, Defendant Buescher's response **(# 43)**, Defendant Daley's response **(# 44)**,

and the Plaintiffs' reply **(# 51)**.[2]

_____

[1]Subsequent to the Plaintiffs' motion, the parties stipulated **(# 42)** to all of the operative
facts in this action. As a result, the summary judgment framework, which usually functions to
determine whether there are contested issues of fact requiring a trial, is inapt. The Court will
treat the Motion as one for a determination as a matter of law based upon undisputed facts.

[2]Because the Court resolves this action in its entirety on the merits, the Court does not
rule on Defendants' various motions to dismiss **(# 12, 13, 32, 37)**, and the Plaintiffs' Motion for

## JURISDICTION AND ISSUES PRESENTED

The Plaintiffs contend that, pursuant to 42 U.S.C. § 1983, they are entitled to a declaration that C.R.S. §1-4-802(1)(g), as applied, is unconstitutional. As set forth in greater detail herein, that statute provides that any person intending to appear on the general election ballot for as an "unaffiliated" candidate for a public office must formally disaffiliate from all political parties within a specified time before the next general election. The Plaintiffs, two candidates seeking to run as "unaffiliated" candidates in the 2010 general election,[3] allege that the statute violates the U.S. Constitution, specifically the First Amendment's protection of the rights of free speech and assembly, and the 14th Amendment's guarantee of Equal Protection. They request a permanent injunction against the enforcement of C.R.S. §1-4-802(1)(g), thus eliminating the required affiliation period for purposes of the 2010 election. For purposes of determination of the constitutionality of C.R.S. §1-4-802(1)(g), the Court exercises jurisdiction pursuant to 18 U.S.C. §1331.

The Court emphasizes that the only issue in this case concerns the constitutionality of C.R.S. § 1-4-802(1)(g). The Court does not intend to, and this Opinion should not be understood to, comment on the wisdom of Colorado's electoral scheme in general, the reasons given by Ms. Riddle and Ms. Curry for their decisions to disaffiliate from all political parties, the merits of

---

Preliminary Injunction (**# 39**), although the Court has considered any additional substantive arguments that have been raised in those motions. Those motions are denied as moot.

[3]Ms. Riddle and Ms. Curry, as putative "unaffiliated" candidates in the 2010 general election, have full standing to assert all claims in this action. The other Plaintiffs in this action are citizens who wish to vote for Ms. Riddle or Ms. Curry as unaffiliated candidates. The voters' standing to assert these claims has been challenged, but need not be resolved because Ms. Riddle and Ms. Curry have sufficient standing to present the issues in this case in their own right.

Ms. Riddle's or Ms. Curry's candidacies, or, in general, the merits of political parties, party assemblies, the petition process, or unaffiliated candidates .

## THE ELECTION PROCESS

An understanding of the Colorado law governing its electoral process[4] and the clarification of certain nomenclature is helpful to appreciate the issues raised and the Court's analysis.

With exceptions that not relevant here, public officials are elected by voters in a general election, held on the first Tuesday in November of even-numbered years. C.R.S. § 1-1-104(17). Candidates who wish to appear on the printed general election ballot (*i.e.* become a "General Election Candidate") may obtain the right to do so in one of two ways: (i) by winning the party primary of recognized political party (*i.e.* becoming a "Party Nominee"), or (ii) if the candidate is not affiliated with a political party, by filing a sufficiently-supported petition for nomination (*i.e.* becoming a "General Election Candidate By Petition").[5]

### A.  Becoming a Party Nominee

Political parties select their nominee through a party primary election, held on the second Tuesday of August of the election year. C.R.S. § 1-4-101(1), (3). Each party may select a single nominee for each office to advance to the general election as the party's representative. As with

---

[4]The ensuing discussion is based on the express provisions of Colorado statutory law. The parties have not come forward with facts that establish that local practice or custom has effectively usurped the statutory provisions, and thus, the Court assumes that the statutory process is in full effect.

[5]In the alternative to appearing on the printed general election ballot, a candidate may also stage a "write-in" campaign, although the provisions governing such a process are beyond the scope of this case.

General Election Candidates, there are two possible paths to a party member obtaining a spot on the printed primary election ballot (*i.e.* becoming a "Party Primary Candidate"): (i) receiving a sufficient number of votes at the party's assembly (*i.e.* becoming a "Party Primary Candidate By Assembly"), and (ii) by filing a suffficiently-supported petition (*i.e.* becoming a "Party Primary Candidate By Petition"). C.R.S. § 1-4-102.

Turning first to the process by which a person becomes a Party Primary Candidate By Assembly, political parties must conduct their party assemblies at least 70 days before the scheduled primary election. C.R.S. § 1-4-601(1). An assembly is comprised of party members who have been selected, through a process not relevant here, to serve as delegates to the party assembly. *See generally* C.R.S. § 1-4-602. At the party assembly, delegates cast votes in each race in favor of their chosen candidate for each office. Those candidates receiving 30% or more of the votes cast for a given office become Party Primary Candidates By Assembly and are listed on the party's printed primary election ballot for that office. C.R.S. § 1-4-601(2). By operation of statute, each person selected as a Party Primary Candidate By Assembly must have been "affiliated with the political party . . . for a period of at least twelve months immediately preceding the date of the assembly . . . unless otherwise provided by party rules." C.R.S. § 1-4-601(4)(a). The parties to this case agree that political parties of Colorado have adopted rules that considerably shorten the statutory 12-month affiliation period.[6]

A party member can also become a Primary Election Candidate By Petition. C.R.S. § 1-

---

[6] For example, Democratic Party rules require Primary Election Candidates selected at an assembly to have been registered as Democrats for at least 12 months preceding the date of the General Election. Republican Party rules require that Primary Election Candidates selected at an assembly have been registered as Republicans for at least 2 months preceding the party assembly.

4-603.  Such candidates bypass the party assembly process and, instead, seek support from party members in the form of signatures on a nominating petition.  State law sets forth various requirements for the timing and contents of a petition and the number of required signatures.  C.R.S. § 1-4-801 *et seq.*  Petitions must be filed at least 75 days before the primary election.  C.R.S. § 1-4-801(5). As with Party Primary Candidates By Assembly, the law imposes a minimum affiliation period on persons seeking to become Party Primary Candidates by Petition – they must have been "affiliated with the political party for at least twelve months prior to the date of filing the petition."[7]  C.R.S. § 1-4-801(3).   A distinction critical to the outcome of this case thus emerges: unlike C.R.S. § 1-4-601(4)(a), which permits party rules to shorten the minimum affiliation period for persons selected as a Party Primary Candidate By Assembly, C.R.S. § 1-4-801(3) does *not* contain language allowing party rules to shorten the statutory affiliation period for persons seeking to become Party Primary Candidates By Petition.

### B.  Becoming a General Election Candidate By Petition

The Party Nominee process in the only means by which persons affiliated with a political party can become a General Election Candidate.  A person who is *not* affiliated with a party can become a General Election Candidate through a petition process similar to that discussed above.   At least 140 days before the general election, the person must file a nominating petition with election officials.  The petition must contain specific information, a specified number of signatures by registered voters, and have been circulated during a prescribed

---

[7]In practice, this requires that a citizen become affiliated with his or her chosen party approximately 17½ months prior to the General Election - 12 months preceding the filing of the petition pursuant to C.R.S. § 1-4-801(3), plus the 75 days between the filing of the petition and the date of the primary election pursuant to C.R.S. § 1-4-801(5), plus the 3-month period between the primary election in August and the general election in November.

time period. C.R.S. § 1-4-802(1). To be eligible to proceed in this manner, the candidate must have become unaffiliated – *i.e.* formally registered a disaffiliation from all other political parties – "at least twelve months prior to the last date the petition may be filed."[8] C.R.S.§1-4-802(1)(g).

## UNDISPUTED FACTS

Plaintiffs Joelle Riddle and Kathleen Curry each hold public office. Ms. Riddle was elected as a La Plata County Commissioner as a registered Democrat in 2006. On August 21, 2009, Ms. Riddle formally changed her party affiliation from Democrat to unaffiliated. She desires to be a General Election Candidate By Petition for La Plata County Commissioner in the November 2010 election.

Ms. Curry was elected as a State Representative as a registered Democrat in 2008. On December 28, 2009, Ms. Curry changed her party affiliation from Democrat to unaffiliated. She desires to be an General Election Candidate By Petition for State Representative in the November 2010 election.

Ms. Riddle changed her registration to unaffiliated approximately 9.5 months before last date a petition to be a General Election Candidate can be filed; Ms. Curry changed her registration to unaffiliated approximately 6.5 months before the last date by which a petition to be a General Election Candidate can be filed. Because their changes to unaffiliated status were made too late under C.R.S. § 1-4-802(1)(g), both are ineligible to submit petitions to be General Election Candidates in 2010 and would have to run, if at all, as write-in candidates.

---

[8]A person registered with a political party but contemplating running as an unaffiliated General Election Candidate in a future election must therefore decide to disaffiliate approximately 16.6 months prior to that general election: 12 months prior to filing the petition as required by C.R.S. § 1-4-802(1)(g), plus the 140-day (4.6 months) period between the filing of the petition and the general election date pursuant to C.R.S. § 1-4-802(f)(I).

The parties to this action agree that Colorado election law was designed "to prevent partisan candidates from entering races as unaffiliated candidates in order to circumvent the party primary process or to bleed off votes from another candidate." It also serves to "promote political stability and protect the integrity of Colorado's political process," by

> thwarting frivolous or fraudulent candidates, avoiding voter confusion, preventing the clogging of election machinery required to administer an election, maintaining the integrity of the various routes to the ballot (i.e. preventing a potential candidate defeated in the primary from petitioning onto the ballot, thereby defeating the purpose of the primary system), presenting the people with understandable choices between candidates who have not previously competed against one another in a primary, refusing to recognize independent candidates who do not make early plans to leave a party and take the alternative course to the ballot, working against independent candidacies prompted by short-range political goals, pique, or personal quarrel, providing a substantial barrier to a party fielding an 'independent' candidate to capture and bleed off votes in the general election that might well go to another party, ensuring that voters are not presented with a laundry list of candidates who have decided on the eve of a major election to seek public office, reserving the general election ballot for major struggles and not allowing it to be used as a forum for continuing intraparty feuds, and limiting the names on the ballot to those who have won the primaries and those independents who have properly qualified.

*Docket* # 42, ¶ 50, 51.

## ANALYSIS

### A.  Equal Protection claim

The Plaintiffs' first claim asserts that application of C.R.S. § 1-4-802(1)(g) would violate the guarantee of Equal Protection found in the 14th Amendment to the U.S. Constitution.

The Plaintiffs have the burden of establishing a violation of their right to Equal Protection.  To establish a claim for violation of the Equal Protection clause, the Plaintiffs must

show: (i) that a similarly-situated person or group; (ii) received more favorable treatment from the government; and (iii) there was no sufficient reason for the government's differing treatment of the two groups. *Kleinsmith v. Shurtleff*, 571 F.3d 1033, 1047 (10th Cir. 2009). A person or group is "similarly situated" to another person or group when the two are alike in "all relevant respects." *See Coalition for Equal Rights, Inc. v. Ritter*, 517 F.3d 1195, 1199 (10th Cir. 2008).

If the Plaintiffs demonstrate that they were subjected to worse treatment than a similarly-situated group, the Court determines whether the differential treatment implicates a protected classification or fundamental right. If the differential treatment does not implicate a suspect classification or fundamental right, the Plaintiffs must show that it is not justified by any rational connection to a legitimate state interest. If a protected classification or fundamental right is impacted, the Defendants must demonstrate that the statute is justified by a compelling governmental interest and that it is the least restrictive means of achieving that interest. *Id.*

Although they vigorously argue their Equal Protection claim, the Plaintiffs do not clearly identify the "similarly-situated" person or group that they contend receives more favorable treatment. Since the Plaintiffs have the burden of making such showing and have not done so, the analysis could end here.

However, giving full deference to the Plaintiffs' general thesis – that party-affiliated candidates are treated more favorably than unaffiliated candidates – the Court observes that there are three possible groups of party members who could arguably be said to be similarly situated to the Plaintiffs: (i) Party Nominees – that is, the party's selected General Election Candidate; (ii) Party Primary Candidates By Assembly, and (iii) Party Primary Candidates By Petition. The Court will address each of these scenarios in turn. In each situation, the Court will focus its

analysis on two characteristics: the *purpose* that the particular aspect of the election system attempts to serve, and the *method* by which a putative candidate is selected.

**1) General Election Candidates By Petition vs. Party Nominees**

The most natural comparison would seem to be unaffiliated General Election Candidates By Petition, such as Ms. Riddle and Ms. Curry, and their competitors in the general election, Party Nominees. On the surface, these two groups would appear to be similarly-situated, at least in purpose – both have met the requirements to be placed on the printed ballot, and they compete to be elected to public office.

However, closer examination of the purpose served by distinguishing the two groups and the method by which each is chosen reveals fundamental differences. The mechanism by which a Party Nominee is selected exists for the purpose of *narrowing* a field of prospective candidates, each vying to represent a defined group of like-minded individuals, down to a single champion who will thereafter speak for the entire group. The Party Nominee selection process thus embodies many of the public goals identified above: it filters out frivolous or fraudulent candidacies at the party level, thus avoiding crowded and confusing general election ballots, and it serves to ensure (at least in theory) that technical, intra-party policy and platform disputes are resolved before the general election, such that the slate of Party Nominees on the general election ballot represent "major struggles" between clearly-defined and distinct party platforms.

By contrast, the process by which unaffiliated candidates petition onto the general election ballot serves the purpose of *broadening* the number of potential candidates. Unlike the requirement that each party select only one Party Nominee, the petition process for unaffiliated

candidates opens up ballot access to multiple[9] unaffiliated candidates.  The purpose of such a mechanism is not embodied in the parties' stipulation, but is obvious: to foster greater public debate and to accommodate aspiring candidates whose policy positions do not necessarily conform to that of an existing political party.[10]  In that sense, the process actually undermines the public goals stated above, creating the potential for voter confusion among candidates with similar platforms and even enables sham candidates designed to "bleed off" support from other candidates with similar policy positions.  Nevertheless, the process allowing for unaffiliated candidacies reflects a conclusion by the legislature that the benefits of promoting independent candidacies sufficiently outweighs the potential harmful effects.  Thus, the purposes served by the two different routes to the general election ballot are polar opposites.

Likewise, the methods by which candidates travel those routes are dissimilar.  The route by which one becomes a Party Nominee – *i.e.* by winning the party primary – is essentially a "general election in miniature."  The candidate must campaign and appeal to the eligible voters – in this case, the party membership – and convince them to cast their ballot for him or her, and in

---

[9]Because each voter can only sign one nominating petition for each office, the number of unaffiliated candidates who can appear as General Election Candidates By Petition is theoretically limited to (number of eligible voters ÷ number of signatures needed per petition). The number of eligible voters will vary significantly depending on the office at issue, but in most circumstances, state law provides that the number of required signatures on a nominating petition will not exceed 2% of the votes cast for that office in the preceding general election.  *See* C.R.S. § 1-4-802(1)(c)(II)-(VII) (requiring signatures totaling "the lesser of [a specified number] or two percent of the votes cast for all candidates [for that office] in the most recent general election").  Using this formula, theoretically 50 or more unaffiliated candidates could become General Election Candidates By Petition in some races.

[10]Indeed, the process by which unaffiliated candidates petition onto the general election ballot even accommodates those candidates whose policy positions <u>do</u> conform with those of a political party but where, for whatever reason, the candidate does not desire to affiliate with that party.

doing so, deprive other candidates of that vote.  By obtaining the most votes in the party primary, the Party Nominee comes with some indicia of popular support.

In contrast, the petition process invoked by an unaffiliated candidate has none of the indicia of an election, and supplies limited evidence of voter support.  Although each eligible voter may only sign one nominating petition per office, C.R.S. § 1-4-904(2)(b), a decision to sign a petition is not the functional equivalent of immutably casting one's ballot for that candidate; voters can sign an unaffiliated candidate's nominating petition without any commitment to support or vote for that candidate in the general election.  They could do so out of a generalized belief that simply having more candidates on the ballot is desirable, out of a belief that the unaffiliated candidate might draw off votes from the opponent of the voter's intended candidate, or simply out of friendship.  Indeed, the voter signing the nominating petition may not have any idea of the putative candidate's policy positions at all.  *See* C.R.S. § 1-4-802(1)(a) (required contents of nominating petition do not include, and may even prohibit, articulation of the candidate's policy positions).  Unlike votes cast immutably at a primary election, then, signatures on a petition give no indication of any particular public support for an unaffiliated candidate.  At best, they indicate only that voters would like the *opportunity* to vote for the unaffiliated candidate.

Thus, because the purposes of and methods by which an individual becomes a General Election Candidate By Petition differs from the purposes and methods by which an individual becomes a Party Nominee, the Court finds that the two groups are not "similarly-situated" for

purposes of the Equal Protection analysis.[11]

## 2) General Election Candidates By Petition vs. Party Primary Candidates By Assembly

Much of the same reasoning discussed above applies when comparing General Election Candidates By Petition to Party Primary Candidates By Assembly. As discussed above, the purpose of having a party primary system is to narrow the field of putative candidates down to a manageable number. If the party primary is a "general election in miniature," the party assembly is a "primary election in miniature." All of the same public purposes discussed above with regard to the party primary apply equally to the process by which party assemblies narrow the entire field of putative candidates down to no more than three who will go on to compete in the primary. As discussed above, this narrowing process is essentially in oppositional contrast to the purposes of the petition process for unaffiliated candidates, which is designed to expand the field of candidates.

Moreover, for the same reasons discussed above, the method by which one becomes a Party Primary Candidate By Assembly is starkly different from the method by which one becomes a General Election Candidate By Petition. As before, the process of persuading voters to cast their one and only ballot for the candidate is not the equivalent of the process of persuading voters to surrender their signature on a nominating petition. One is a binding and unambiguous expression of the voter's desire and intention, and the other is not.

---

[11]Even assuming that the Court found these two groups similarly-situated, the Plaintiffs have nevertheless failed to show the second element of the Equal Protection analysis: that the similarly-situated group receives more favorable treatment. As discussed below, to the extent that one can compare the minimum affiliation periods applicable to Party Nominees to those of General Election Candidates By Petition, there can be situations in which the Party Nominee is actually treated *less* favorably than the General Election Candidate By Petition.

Accordingly, the Court finds that the Plaintiffs, as General Election Candidates By Petition, are not similarly-situated to Party Primary Candidates By Assembly. As a result, the Court need not consider why the two groups are treated differently for purposes of minimum affiliation periods.

### 3) General Election Candidates By Petition vs. Party Primary Candidates By Petition

General Election Candidates By Petition are most akin to Party Primary Candidates By Petition. As noted above, a party-affiliated candidate who uses the petition process to get onto the party primary ballot is similar to an unaffiliated candidate who uses that same process to get onto the general election ballot. In both cases, the public purpose being advanced is that of expanding the ballot to accommodate those candidates who, for whatever reason, do not wish to participate in the narrowing process that party assemblies and party primaries entail. And in both cases, the method being used – securing non-binding indicia of voter interest in having the putative candidate appear on the ballot – are similar. The Court is not prepared to say that there is no material difference between the two groups, but for purposes of the Equal Protection claim, it appears that if the Plaintiffs can be said to be similarly-situated in all material respects to any group, they are most similarly-situated to Party Primary Candidates By Petition.

However, if similarly situated, there is no material difference in their treatment. Both groups are subject to a statutory minimum affiliation (or dis-affiliation) period of 12 months from the date on which their nominating petition is due.[12] *Compare* C.R.S. § 1-4-801(3) *and*

---

[12]If anything, the statutory requirements actually yields a slight benefit to unaffiliated candidates as compared to party candidates proceeding by petition. Due to the scheduling of the primary elections relative to the general election, party candidates proceeding by petition must tender their petitions approximately 17.5 months before the general election, while unaffiliated

C.R.S.§1-4-802(g).  Neither statute permits the minimum affiliation period to be shortened, by party rule or otherwise.  Thus, because the Plaintiffs, as unaffiliated candidates, are treated no less favorably than similarly-situated party-affiliated candidates, their Equal Protection claim fails.

The Plaintiffs, apparently conscious of the fact that the minimum affiliation period for Party Primary Candidates By Petition is fatal to their claim of disparate treatment, argue that the disaffiliation requirement imposed on candidates seeking to be placed on a political party's primary ballot through the petition process as set forth in C.R.S. § 1-4-801 is also unconstitutional.  They rely on two cases for this assertion.  Neither case is apposite.

The first case on which the Plaintiffs rely is a 1988 decision by the Denver District Court in *Colorado Democratic Party v. Meyer*, Civil Action No. 88CV7646. (The presence of an additional plaintiff in that case, Buie Seawell, leads the parties to refer to this as the *Seawell* case, and this Court will preserve that practice.)  In *Seawell*, a candidate seeking the Democratic Party's nomination for office changed her party affiliation to Democrat after the statutory deadline of C.R.S. § 1-4-601(4), but within the time frame permitted by party rules.  Because the statutory language at the time did not contain the current provision that allows political parties to set shorter affiliation periods, the Colorado Secretary of State refused to certify the candidate for inclusion on the primary ballot. The candidate sued to set aside the state law.  The court ruled that the state-created affiliation deadline could not trump party rules, explaining that "only the Colorado Democratic Party has the right to determine who may be a candidate for public office under the banner of the Colorado Democratic Party."

---

candidates must do so only approximately 16.6 months before the general election.

Conspicuously absent from the *Seawell* ruling is any reference to the process by which a candidate obtains ballot access by petition, whether under C.R.S. § 1-4-801 (for party-affiliated candidates) or § 1-4-802 (for unaffiliated candidates). Neither the *Seawell* plaintiffs' verified petition nor the transcript of the Denver District Court's ruling make any reference to the notion of nominating petitions or to either of the statutory sections relating to such petitions.[13] Because *Seawell* does not purport to adjudicate the constitutionality of the process by which a candidate petitions onto a ballot, the Plaintiffs' contention that it deems C.R.S. § 1-4-801(3) to be unconstitutional is incorrect.

Parsed more finely, the Plaintiffs' argument appears to be that although *Seawell* does not expressly find C.R.S. § 1-4-801(3) to be unconstitutional, but the reasoning of that decision suggests that, had the court been asked to adjudicate its constitutionality, it would have also found the statute unconstitutional for the same reasons. This Court declines the invitation to speculate as to how *Seawell*'s reasoning would have applied to a different statute and in a different context.[14] Accordingly, the Court finds the Plaintiffs' argument *Seawell* found C.R.S.

_____

[13]It is not immediately clear whether C.R.S § 1-4-801(3) existed in its current form at the time *Seawell* was decided, but it is clear that, as of 1988, Colorado had recognized the right of minor party candidates to petition onto party primary ballots. *See Anderson v. Mullaney*, 444 P.2d 878 (1968).

[14]Indeed, the *Seawell* decision was premised on the constitutional right of members of the Democratic Party to associate – in other words, "if the party wants to let in people who haven't been affiliated with them for a year, that's their prerogative." *Docket* # 14, Ex. 2 at 6-7. The court was particularly mindful of the fact that the Democratic Party had changed its rules for the very purpose of allowing the candidate to enter the primary, "welcoming [her] with open arms." *Id.* at 10. The court contrasted this situation with the abstract situation in which a candidate was "seeking to force her candidacy upon the Colorado Democratic Party contrary to the party's desires." *Id.* One might make a plausible argument that the "welcomed by the party"/"forced upon the party" distinction might closely correlate with the "selected by the party assembly"/"petitioned onto the ballot" distinction. In such circumstances, *Seawell*'s reasoning

15

§1-4-801(3) to be unconstitutional is without merit.

The second case on which Plaintiffs' rely for the proposition that C.R.S. § 1-4-801(3) is unconstitutional is *Tashjian v. Republican Party of Connecticut*, 479 U.S. 208 (1986), an opinion upon which the *Seawell* court based its reasoning. In *Tashjian*, the Connecticut Republican Party modified its rules to permit unaffiliated voters to vote in the Republican primary. When the Secretary of State refused to enforce the party's rule, the party sued. The Supreme Court affirmed lower court rulings in favor of the party, explaining that the First Amendment's protection of associational rights required the state to defer to the party's desire to allow unaffiliated voters to participate in the primaries. *Id.* at 215. An extended discussion of *Tashjian*'s reasoning is unnecessary. As with *Seawell*, *Tashjian* does not address the constitutionality of minimum affiliation periods on candidates seeking ballot access by petition, and thus, does not address the constitutionality of C.R.S. § 1-4-801(3). The general proposition in *Tashjian* – that a party could choose to relax its affiliation rules when it desired, but could not be compelled to do so, *id.* at 215, n. 6 – dictates no clear outcome here, where there is no indication that any political party has sought to relax the minimum affiliation period for petitioning candidates and been rejected by the State.

Accordingly, neither opinion is persuasive in support of, much less compels, the conclusion that C.R.S. § 1-4-801(3) is unconstitutional. In the absence of that conclusion, Plaintiffs are unable to escape the fact that the statutory minimum affiliation period for Party Primary Candidates by Petition is the precisely the same as for General Election Candidates By

---

would not result in C.R.S. § 1-4-801(3) being deemed unconstitutional.

16

Petition.

The Plaintiffs also draw the Court's attention to *Storer v. Brown*, 415 U.S. 724 (1974). Interestingly, the facts presented here are effectively identical to those of *Storer*. That case involved a challenge to a California statute that prohibited unaffiliated candidates from appearing on a general election ballot if, among other things, the candidate had been affiliated with a political party during the year prior to the state's primary election in that election cycle. *Id.* at 726-27. Several candidates seeking to run as unaffiliated candidates contended that the law violated their First and Fourteenth Amendment rights.[15] The trial court dismissed such challenges, finding the statute constitutional. The Supreme Court agreed.

After noting that considerable constitutional deference is granted to the states in crafting election laws, *id.* at 730, the Supreme Court observed that California had a legitimate interest in "avoiding overcrowded ballots" and "protect[ing] the integrity of its political process from frivolous or fraudulent candidacies."[16] *Id.* at 732-33. It found that the minimum affiliation period for independent candidates "involves no discrimination against independents," because the state law also provided that candidates seeking party nominations were also restricted to a one- year period during which they could not have changed party affiliation. *Id.* at 733. The Court acknowledged that any candidate wanting to change affiliation must do so at least 12 months before running for election, and thus, "must anticipate his candidacy substantially in

---

[15] It is not clear from the opinion whether the rights were described in the same manner as asserted here, but the opinion suggests that both First and Fourteenth Amendment rights were invoked by the plaintiffs there.

[16] The statement of public policy concerns stipulated to by the parties here appears to be derived verbatim from *Storer*.

advance of his election campaign," and held that requirement to be consistent with the Constitution. *Id.* at 734.

The Plaintiffs contend that the result in *Storer* is distinguishable because there, the minimum affiliation period "applied more or less equally to candidates seeking the nomination of political parties and to independents." Thus, they draw this Court's attention to language in which the Supreme Court observed that California's scheme "involves no discrimination against independents." 415 U.S. at 733. As noted above, although Colorado affords more favorable treatment to Party Primary Candidates By Assembly than it does to either strain of petitioning candidates, such distinction is irrelevant for Equal Protection purposes because candidates selected at a party assembly are dissimilar from those invoking the petition process. As a materially dissimilar group, the Court can eliminate assembly-selected candidates from the Equal Protection analysis. When the analysis is properly constrained to only those groups that are similarly-situated in all material respects – that is, unaffiliated General Election Candidates By Petition and party-affiliated Party Primary Candidates By Petition – this case also "involves no discrimination against independents"and is effectively identical to *Storer*. At that point, the reasoning in *Storer* effectively becomes dispositive, compelling a judgment in favor of the Defendants here.[17]

---

[17]Although the Plaintiffs have not specifically raised it, this Court notes that in *Storer*, the Supreme Court found that the California 12- month minimum affiliation requirement was not significantly longer than an 11-month minimum affiliation requirement it had upheld in a prior case. 415 U.S. at 734, *citing Rosario v. Rockefeller*, 410 U.S. 752 (1973). Here, the minimum affiliation period is effectively 16.6 months prior to the general election. However, the difference between the period here and California's period is illusory, resulting only from the timing of the primaries involved. *Storer* makes clear that the 12-month period was measured back from the date of California's primary election. The parties do not address the timing of California's primary election at the time *Storer* was decided, but the Court takes judicial notice

The Court has examined the remainder of the Plaintiffs arguments with regard to the Equal Protection claim, and finds them to be without merit.  Because the Plaintiffs have failed to show that similarly-situated persons (*i.e.* Party Primary Candidates By Petition) are treated more favorably than the Plaintiffs, as General Election Candidates By Petition, and because cases such as *Storer* demonstrate that minimum affiliation periods equally applied to similarly-situated persons are constitutional, the Court finds that the Defendants are entitled to judgment on the Plaintiffs' Equal Protection claims.

**B.  First Amendment claims**

The Plaintiffs also contend that the Colorado statute impermissibly burdens their rights to freedom of speech and freedom of association under the First Amendment to the United States Constitution.[18]  With regard to such claims, the 10th Circuit has explained that a Court must first examine "the character and magnitude of the asserted injury," then evaluate "the precise interests put forward by the State as justifications".  Ultimately, the Court must determine "the extent to which those interests make it necessary to burden the plaintiff's rights."  *Rainbow Coalition of Oklahoma v. Oklahoma State Election Board*, 844 F.2d 740, 743 (10th Cir. 1988).  The 10th Circuit has made clear that the traditional "strict scrutiny" analysis, in which the State must

---

of the fact that California's 2010 primary election took place on June 8, 2010, five months before the general election in November. Measured from the general election, the scheme approved of in *Storer* imposed a minimum affiliation period of 17 months (12 months prior to primary election, plus 5 months between primary election and general election).  Thus, the scheme here, imposing a 16.6 month minimum affiliation period, would similarly be permissible.

[18] The Plaintiffs contend that this is a facial challenge.  To be facially invalid, there cannot be any situation in which the statute can be constitutionally applied.  Here, the Plaintiffs offer only the application of the statute to themselves as evidence of unconstitutionality, therefore the Court treats this as "an applied" challenge.

demonstrate a compelling governmental interest and show that it has selected the "least restrictive means necessary" to achieve that interest, does not apply in cases such as these. *Id.* at 742-43.

Extensive discussion of the parties' relative interests is not needed. The Court readily accepts that Ms. Riddle and Ms. Curry wish to continue their public service, but that they believe in good conscience that they cannot do so under the banner of any existing political party. The Court acknowledges the benefits of a robust, multi-faceted political discourse and appreciates the unique viewpoints and values that minor parties and unaffiliated candidates can bring to the election process. At the same time, the Court recognizes the parties' stipulation as to the public policies sought to be advanced by Colorado election law.

The presence of independent candidates in an election has distinct benefits, but if it is totally unregulated, it can increase voter confusion and distraction, political opportunism, and obscure rather than clarify the differences between policy positions. Thus there is an inherent tension between having *enough* independent participation in the democratic process and having *too much*. As the Supreme Court in *Storer* notes, state legislatures are given great deference in drawing the lines that both accommodate and restrict electoral participation by independent candidates. The Court's role is only to determine whether the line drawn by the Colorado Assembly unreasonably and unnecessarily burdens the rights of persons like the Plaintiffs.

The Court cannot say that, in these circumstances, the legislature's decisions unreasonably or unnecessarily burden the Plaintiffs' rights. The obvious intent of C.R.S. § 1-4-802(g) is to ensure that General Election Candidates By Petition have sufficiently distanced themselves from any prior affiliation with a political party to be recognized by the electorate as

"unaffiliated." Such distinction is necessary to, among other things, ensure against "potential candidate[s] defeated in the primary from petitioning onto the ballot, thereby defeating the purpose of the primary system," and "independent candidacies prompted by short-range political goals, pique, or personal quarrel."

Unfortunately, it is impossible to accurately and reliably measure the degree to which an person who disaffiliates from their party and proceeds as "unaffiliated" has actually done so because of a difference in policy viewpoints, as opposed to "short-range political goals, pique, or personal quarrel." The Colorado Assembly has employed a time period for registration of party affiliation or disaffiliation as a proxy for ascertaining a candidate's association with or detachment from a political party. It is set early enough in the election cycle to generally accommodate those who leave their party due to longstanding policy differences, but late enough to prevent late-breaking departures from parties based on pique or political opportunism.[19]

An affiliation time requirement is undoubtedly a blunt instrument, but its virtues are that it is objective and can be applied to petitioning candidates in both primary and general elections.[20] The drawback of any objective standard is its inherently inflexibility. Regardless of the time period used, sincerely-motivated candidates – even incumbents such as the Plaintiffs – may be precluded from petitioning onto primary or general election ballots. The question, then,

---

[19]Once again, the Court emphasizes that it has formed no opinion regarding the motivations of Ms. Riddle and Ms. Curry in shedding their party affiliations, and the Court accepts, at face value, their contentions that their departures from the Democratic Party were based on policy disagreements.

[20]Indeed, a uniform temporal limitation on changes in affiliation avoids inquiring into the particular motivations of each candidate, which, in turn, could unduly entangling the State in assessments of a candidate's constitutionally-protected political views or speech.

is whether Colorado's decision to deem select 12 months prior to the general election to unreasonably or unnecessarily burdens the Plaintiffs' First Amendment rights.

In this regard, the Court is guided by *Storer*. In *Storer*, the Supreme Court concluded that states are empowered to set a time period for affiliation or disaffiliation as part of their election processes, and the fact that some people are excluded as a candidate as a result does not make the restrictions unreasonable. There, as here, the minimum affiliation period was set at 12 months prior to a designated point in the election process, and the Court in *Storer* found that such a decision does not unreasonably burden the First Amendment rights of those who seek to be candidates. This Court is persuaded by the analysis in *Storer*, and can find no reason not to apply it in this matter. Based upon the *Storer* reasoning, the minimum affiliation period contained in C.R.S. §1-4-802(1)(g) does not unreasonably burden the Plaintiffs' First Amendment rights.

In deference to the Plaintiffs, however, the Court addresses one late-breaking argument. Near the end of the most recent legislative session, the Colorado assembly passed House Bill 10-1271, which was subsequently was signed into law. The enactment modifies several sections of Colorado election law, including C.R.S. § 1-4-801 and § 1-4-802, to shorten the minimum affiliation periods. Instead of a 12-month period, measured from a particular point in the election cycle, the statutes now simply require that candidates have been affiliated with their intended party (or unaffiliated, as the case may be) as of the first business day of January of the election year. This amendment is not applicable for 2010 elections, but instead becomes effective in the 2012 election cycle.

The Plaintiffs contend this change constitutes a legislative admission that the previous

minimum affiliation period was longer than necessary to achieve the legislature's stated goals. Implicit in this argument is the notion that, because the General Assembly has changed the law, the Court should determine the prior iteration of C.R.S. §1-4-802(1)(g) to be unconstitutional and allow the Plaintiffs to participate in the 2010 general election in the same way as they will be able to beginning in 2012.

The Court appreciates the practical appeal of the Plaintiffs' argument, but that appeal ignores the distinction between the roles of the General Assembly and this Court. This Court is not empowered to modify or amend state law; the Assembly is. Apparently, the Assembly chose not to make its changes to the minimum affiliation period applicable to the 2010 election cycle. This Court cannot substitute its judgment for that of the Assembly; it is limited to a determination of whether the law applicable to the Plaintiffs is unconstitutional. The fact that the General Assembly is now convinced that a shorter minimum affiliation period can effectuate the State's public policy goals does not necessarily compel a conclusion that the prior version, applicable to the Plaintiffs here, was unconstitutional.[21] As noted earlier, the question is whether the minimum affiliation period applicable to the Plaintiffs is unreasonable.

The 12-month period that is currently applicable is not patently unreasonable. As discussed above, it serves legitimate state interests. Admittedly, it has an unfortunate adverse impact on the Plaintiffs, but it is functionally identical to a minimum affiliation period that was

_____

[21]An argument that the version of the statute applicable to the Plaintiffs is unconstitutional simply because the Colorado legislature has since shortened the minimum affiliation period is a means of invoking the strict scrutiny analysis' "least restrictive means" test. That test nullifies state regulation were there is a less restrictive means available to accomplish the State's goals. However, as the 10th Circuit made clear in *Rainbow Coalition,* the Court is not to apply the strict scrutiny test in cases such as these.

found constitutional *Storer*. Thus the passage of House Bill 10-271 does not change the constitutional calculus. Accordingly, the Court finds that the existing version of C.R.S. § 1-4-802(g) does not unconstitutionally infringe upon the Plaintiffs' First Amendment rights.

## CONCLUSION

For the foregoing reasons, based on the parties' stipulated facts and the briefing herein, the Court finds that the Defendants are entitled to judgment in their favor on the merits of this action. Judgment to that effect shall enter contemporaneously with this Order. The motions at **Docket # 12, 13, 31, 32, 37,** and **39** are **DENIED** as moot.

Dated this 23d day of June, 2010

**BY THE COURT:**

Marcia S. Krieger
United States District Judge